UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWIN SIEGNER,

                Plaintiff,

v.                                     Civil Case No. 14-11579
                                     Honorable Linda V. Parker

SALEM TOWNSHIP,
MARCIA VAN FOSSEN,
DAVID TRENT, ROBERT
HEYL, PAUL UHEREK,
SUSAN BEJIN, and JIM
RACHWAL,

                Defendants.
_____/

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

      Plaintiff filed this lawsuit against Defendants on April 21, 2014, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA").  Within Count I of his Complaint, entitled "Retaliation in Violation of 1st Amendment of the Constitution of the United States of America under Title VII", Plaintiff also refers to 42 U.S.C. § 1983.  (Compl. ¶ 74.)  Presently before the Court is Defendants' motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure

56 on May 26, 2015.  (ECF No. 53.)  The motion has been fully briefed.  (ECF

Nos. 58, 62.)  Also before the Court is Plaintiff's June 16, 2015 motion to amend

his Complaint to add Gary Whittaker as a defendant and a claim of race

discrimination under Title VII.  (ECF No. 57.)  That motion also has been fully

briefed.  (ECF Nos. 59, 60.)  This Court held a hearing with respect to both

motions on August 12, 2015.  For the reasons that follow, the Court grants

Defendants' motion for summary judgment and denies Plaintiff's motion to amend

his Complaint.

## I.      Factual and Procedural Background

Plaintiff is a part-time firefighter with the Salem Township Fire Department.

Defendants are Salem Township (or "Township"), individuals who served on the

Salem Township Board of Trustees ("Board") in 2012, and the Township's current

Fire Chief.

Plaintiff began working for Salem Township as a firefighter in 2000.  (ECF

No. 53, Ex. 8.)  In 2007, the Township Supervisor and Treasurer assigned Plaintiff

the additional duties of IT Administrator.  (*Id.*)  On or about December 8, 2009,

Plaintiff was informed by the Township Supervisor and Treasurer that he was no

longer needed as the IT Administrator and that an outside contractor had been

hired by the Township to fill that role.  (*Id.*)  On March 11, 2010, Plaintiff filed a

Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC"), claiming that the removal of his IT Administrator duties was a result of his race, Asian. (*Id.*) Plaintiff eventually received a Right to Sue Letter, but he did not pursue a lawsuit against the Township. (Compl. ¶ 12.)

In 2012, the Board was seeking to fill the Township's Fire Chief position. At the time, Ferman "Eddie" Rohraff ("Rohraff") was serving as the interim Fire Chief. (Compl. ¶ 17.) Initially, the Board set a deadline for the submission of applications for May 31, 2012. Plaintiff did not apply, because he assumed Rohraff would be given the position. (ECF No. 53, Ex. 2 at 88-89.)

The Board subsequently reopened the application process for current firefighters, only, and set a new deadline of September 21, 2012 for the submission of applications. (*Id.*, Ex. 4 at 28.) Before the deadline, the Board interviewed some candidates who had applied, including Rohraff. (Compl. ¶¶ 32, 35.) Plaintiff and James Rachwal were among the individuals who submitted applications for the position. At the time, Rachwal was a Township firefighter. (*Id.* ¶ 24.) He also was the President of the union representing the firefighters. (*Id.*)

The Board convened at a public meeting on September 25, 2012, at which time the hiring of the Fire Chief was to be discussed. (ECF No. 54, Ex. 3.) Prior to that time, all applicants had been interviewed for the position except Plaintiff and Rachwal. (*Id.*, Ex. 13 at 38.) Rachwal was interviewed during the meeting. (*Id.* at 8-37.) The discussion of the Fire Chief hiring began with Defendant Robert

3

Heyl ("Heyl"), Township Supervisor and a member of the Board, raising the issue of the insufficiency of Plaintiff's application and therefore whether it should be considered for an interview. (*Id*. at 38.) Heyl noted that Plaintiff's application was insufficient because it was missing the entire third page. (*Id*.; *see also* Ex. 5.)

Defendant Marcia Van Fossen ("Van Fossen"), Township Trustee and a member of the Board, indicated that she had brought up the issue to Heyl that evening. (*Id*.) Van Fossen then explained why she found the application insufficient. (*Id*. at 41-42.) Specifically, Van Fossen pointed out that Plaintiff failed to indicate in the employment section his course of study, years completed, and diploma/degree. (*Id*. at 41.) Plaintiff also failed to indicate any prior employment experience other than as a Township fire fighter, even though Van Fossen was aware that he had other employment experience. (*Id*.) Van Fossen pointed out that Plaintiff listed "Uherek" as a reference-- presumed to be Paul Uherek, Township Treasurer and a Board member-- but earlier indicated that his current employer (i.e. the Township) could not be contacted as a reference. (*Id*. at 41-42.) According to Van Fossen, the phone number for the second reference was incorrect. (*Id*.) Van Fossen was troubled by Plaintiff's signature on the application, which she could not read and believed it did not look like a signature. (*Id*.) Because the third page of the application was missing, Van Fossen indicated

4

that Plaintiff had not provided his driver's license information.  (*Id*.)  As a result, she pointed out, the Township could not perform the required driver's license test.

Board member Brien Witkowski asked Van Fossen if she had similarly evaluated the other applications and found no deficiencies.  (*Id*. at 43.)  Van Fossen responded that Rohraff's application also was incomplete in that he failed to list references; however, she felt that since Rohraff had been serving as the interim Fire Chief for months, it was not necessary to have references.  (*Id*.)

Heyl then moved for Plaintiff's application to be considered insufficient and excluded from the hiring process.  (*Id*. at 44.)  Paul Uherek, Township Treasurer and a Board member, seconded the motion.  (*Id*.)  A vote was taken, and all but one of the Board members present (one board member was absent) voted to remove Plaintiff's application from consideration.  (Id. at 45.)  Witkowski was the lone "no" vote.  (Id.)  The Board then proceeded to vote on the remaining candidates and unanimously chose Rachwal as the Fire Chief.  (*Id*. at 67.)

At his deposition in this matter, Heyl testified that he believed Plaintiff's application should not be considered because submitting an application with missing information reflects on the applicant's ability to perform and submit information required in the position.  (ECF No. 53, Ex. 9 at 98-99.)  He claimed, as he also stated during the Board meeting, that it had been an unwritten policy during

his tenure as Township Supervisor to reject incomplete applications.[1]  (*Id*. at 124-25; ECF No. 54, Ex. 13 at 40.)  This policy was confirmed by Van Fossen and Defendant Susan Bejin, a Township Trustee and Board member.  (ECF No. 62, Ex. 17 ¶ 7; Ex. 18 ¶ 14.)  Uherek testified at his deposition that he viewed Plaintiff's application to be intended as a political statement rather than a serious application for employment based on Plaintiff's failure to include certain information and his responses to some questions.  (ECF No. 53, Ex. 10 at 114-117.)  For example, in response to the question of why he wants to be Fire Chief, Plaintiff responded: "To put an end to the corrupt practices brought on by the Board."  (*Id*. at 115; *see also* Ex. 5 at Pg ID 688.)  When asked what his goals were for the next five and ten years, Plaintiff responded: "To witness justice prevail."  (*Id*.)  Uherek testified that he was insulted by Plaintiff's answers.[2]  (*Id*., Ex. 10 at 116-17.)

---

[1] Citing to Heyl's deposition testimony, Plaintiff claims that this policy only applied to commercial bids, not job applications.  (ECF No. 58 at Pg ID 1123, citing ECF No. 53, Ex. 9 at 125-26.)  Although the examples Heyl provided for when the Board had applied this policy were commercial bids, he did not testify that the policy was limited only to commercial contracts.  (*See* ECF No. 53, Ex. 9 at 125-26.)  Heyl could not recall whether there was any employment position other than the Fire Chief position considered by the Board.  (*Id*. at 126.)

[2] In their motion for summary judgment, Defendants offer Township Firefighter Patrick Belanger's statement that he previously worked in the human resources department of United Parcel Service and that he could have been fired if he had accepted applications like Plaintiff's and Rohraff's applications for Fire Chief, due to their incompleteness.  (*See* ECF No. 53 at Pg ID 529, citing Ex. 11 at 126, 197.)  The Court is unsure of why Belanger's opinion is significant.  For one, the Board considered Rohraff's application despite its deficiencies.  Second, Belanger was (cont'd . . .)

During his deposition in this matter, Witkowski testified that he believed

Plaintiff's EEOC complaint caused the Board to treat his incomplete application

differently than Rohraff's and reject it for consideration.  (ECF No. 53, Ex. 4 at 71,

73.)  Witkowski testified that he had heard comments from Heyl and Uherek,

specifically, reflecting their anger with the EEOC filing.  (*Id*. at 69.)  Witkowski

had no specific recollection of the statements made by Heyl or Uherek or when

those statements were made.  (*Id*. at 75.)  Witkowski acknowledged, however, that

he was never told that Plaintiff's EEOC filing was the reason Heyl or Uherek

viewed Plaintiff's application as insufficient.  (*Id*. at 73.)  He also testified that

there was no mention of the EEOC complaint during the September 25, 2012

Board meeting.  (*Id*. at 74.)  When asked if Heyl and Uherek simply could have

been expressing exasperation with the time commitment involved in responding to

Plaintiff's EEOC filing, Witkowski answered: "I would be again speculating at

their reason for frustration."  (*Id*. at 76.)

On April 9, 2013, Plaintiff filed a second EEOC Charge of Discrimination

with respect to his treatment during the Fire Chief hiring process.  (ECF No. 53,

Ex. 8.)  Plaintiff claimed that his application was rejected by the Board in

retaliation for the filing of his earlier EEOC complaint.  (*Id*.)  Plaintiff also alleged

---

not a member of the Board and therefore had no say as to whether or not Plaintiff's
or Rohraff's applications were considered.

7

that Rachwal, since becoming Fire Chief, had told Plaintiff that he " 'should just quit' or words to that effect." (*Id*.)  On the boxes to indicate the basis of the alleged discrimination, Plaintiff checked "race" and "retaliation."[3]  (*Id*.)

According to Plaintiff's Complaint, Rachwal had pulled Plaintiff aside in November 2013, and recommended that Plaintiff "resign to make room for other interested firefighter candidates." (Compl. ¶ 60.)  Plaintiff claims that Rachwal "harass[ed]" him about his fire run participation rate, insisting that he bring his rate up to at least twenty percent. (*Id*. ¶ 61.)  Plaintiff also claims that Rachwal has harassed him by requiring that he text or email Rachwal whenever he is in town and available to respond to runs. (*Id*. ¶ 62.)  On February 2, 2014, Rachwal sent Plaintiff a memo, which also was placed in Plaintiff's employee file, indicating that Plaintiff may be terminated on June 30, 2014, if he does not make the "20% participation goal." (Compl. ¶ 66.)  According to Rachwal, his comments to Plaintiff were meant to encourage Plaintiff to participate more in the fire department. (ECF No. 54, Ex. 14 at 119.)  Plaintiff's participation rate perhaps was less than twenty percent because does not live in the Township full-time.

---

[3] In response to Defendants' summary judgment motion, Plaintiff offers facts relevant to a claim of race discrimination.  As indicated, Plaintiff does not allege race discrimination in his Complaint, although he seeks to amend his pleading in order to do so.  The facts relevant to such a claim will be discussed *infra* when evaluating his motion to amend.

Sometime around 2007, Plaintiff became employed full-time as a federal law enforcement officer with the Department of Homeland Security.  (ECF No. 53, Ex. 2 at 14.)  Plaintiff's home base in this position is in Detroit, Michigan, although his work station is in Sault Ste. Marie, Michigan.  (*Id*.)  Plaintiff therefore splits his residence between Plymouth, Michigan (in Salem Township) and Rudyard, Michigan (in the upper peninsula).  (*Id*. at 7.)

Rachwal has never taken any disciplinary action against Plaintiff.  (ECF No. 53, Ex. 14 at 187.)  At the time of his deposition, Plaintiff remained employed as a fire fighter with the Township.  (*Id*. Ex. 2 at 8.)

## II.   Applicable Standards

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend is freely granted where justice so requires. *See* Fed. R. Civ. P. 15(a). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.  *Id*.  Prejudice may result from delay, but "[d]elay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical

factors in determining whether an amendment should be granted." *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994) (citations omitted).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## III.   Analysis of Plaintiff's Motion to Amend his Complaint

As indicated, Plaintiff seeks leave to file a First Amended Complaint adding Gary Whittaker as a defendant and a claim of race discrimination in violation of Title VII.  In November 2012, Whittaker took Heyl's position as Township Supervisor.  (ECF No. 58, Ex. 1 at 5.)  Plaintiff alleges that Whittaker "was the newly elected Township Supervisor at the time [the Fire Chief position was being filled and he] promoted and pushed for the Salem Township Board . . . . to promote Defendant Rachwal to the position of Fire Chief."  (ECF No. 57, Ex. 3 ¶ 109.) Plaintiff alleges in his proposed First Amended Complaint that Whittaker is a racist.  (*Id*. ¶ 103.)

To support this latter assertion, Plaintiff relies on deposition statements by Whittaker and Patrick Belanger, a Township firefighter.  Plaintiff contends in his motion that his request to amend his complaint at this juncture results from having

11

obtained the transcript of those depositions only on May 22, 2015.  (ECF No. 57

¶ 2.)  Plaintiff states that "[u]pon review of the transcripts . . ., it is clear that facts

are now present that illustrate Plaintiff was discriminated against based upon his

race."  (*Id*. ¶ 5.)

During his deposition, Whittaker acknowledged that he has flown a

Confederate flag and has a "black boy hitching post" on his farm.  (*Id*., Ex. 2 at 51-

52, 54-55.)  According to Belanger, "[t]he 'N' word is not verboten at the fire hall"

and Whittaker "fits in with the way they talk about things and remarks that are

derogatory against African-Americans . . . [a]nd gays . . .."  (ECF No. 57, Ex. 1 at

196.)  Belanger also testified that the Township never would have hired Plaintiff as

Fire Chief "no matter what he wrote down.  It's a fact."  (*Id*. at 193.)  Although not

asked why, Belanger testified earlier during his deposition that, in his opinion, the

Board did not like Plaintiff because he is Asian:

> Q.     Are you aware of prior to Ed Siegner not being given an
> interview for the chief's position do you know [sic] if the Salem
> Township board did not like Mr. Siegner?
>
> A.     Well, and this is something that it's [sic] my opinion and I don't
> know if you want an opinion or you just want yes or no.  But the
> average White man's opinion of Asians is that they are more
> intelligent than the average white man.  And Ed Siegner is seen as too
> smart to have around, we need to get rid of him.
>
> Q,     Based upon--
>
> A.     That's my opinion.

(*Id*. at 38.)

Defendants respond to Plaintiff's motion, arguing that his request to amend comes too late and, if allowed, will cause them prejudice because they already prepared and filed their summary judgment motion.  Defendants contend that they will suffer undue prejudice if Plaintiff is now allowed to recast his claim as one for race discrimination and "essentially start this case all over again."  (ECF No. 59 at Pg ID 1229.)  Given that Plaintiff alleged race discrimination in both of his EEOC complaints, Defendants argue that Plaintiff's claim of race discrimination "w[as] clearly apparent" when he initiated this lawsuit.  (*See* ECF No. 53, Ex. 8.)  Defendants also argue that the entire premise of Plaintiff's motion to amend is false as neither Whittaker's nor Belanger's deposition "in any way show[s] that Plaintiff himself was the subject of racial discrimination."  (ECF No. 59 at Pg ID 1229.)

The Court agrees with Defendants that Plaintiff's request to now add Whittaker as a defendant and a race discrimination claim comes too late.  *See Duggins v. Steak 'N' Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).  Both the discovery deadline and the dispositive motion deadline have passed.  (*See* ECF No. 43.)  Plaintiff was aware of the basis of the claim well before he filed this lawsuit, as evident from his April 2013 EEOC complaint.  Allowing Plaintiff's requested amendment would cause Defendants significant prejudice in having to reopen

discovery, advance a defense on a quite different claim, and prepare a second summary judgment motion.  Moreover, the proposed amendments would be futile.

To prove a claim of race discrimination under Title VII, Plaintiff would have "to either 'present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment.' " *Carter v. Univ. of Toledo*, 349 F.3d 269, 272-73 (6th Cir. 2003) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)).  "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).  "Direct evidence is evidence that proves the existence of a fact without requiring any inferences."  *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).  Plaintiff has neither direct nor circumstantial evidence suggesting that the Board's decision was based on his race.

Plaintiff presents evidence to suggest that Whittaker harbors racist views towards African Americans.  The relevance of this is questionable with respect to discrimination against Plaintiff, who is Asian and not African-American.  In any event, Whittaker was not a member of the Board and did not vote on Plaintiff's application.  Plaintiff does not offer evidence suggesting that Whittaker influenced

14

the Board members to reject Plaintiff's application.  All Plaintiff alleges (without

proof offered in support) is that Whittaker encouraged the Board to hire Rachwal

as Fire Chief.  This might have been due to Whittaker's feelings about Rachwal's

abilities than any animosity he may have felt towards Plaintiff.  There is nothing

offered by Plaintiff suggesting that any Board member voting on whether to reject

Plaintiff's application as insufficient embraced Whittaker's racial animus.  In short,

the evidence concerning Whittaker does not even offer circumstantial evidence of

discrimination in connection with the Fire Chief application process.  The same is

true with respect to the information from Belanger.

Belanger's opinion as to why he believes the Board would never hire

Plaintiff certainly does not constitute direct evidence of discrimination.  *See Carter*

*v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) (citing *Hopson v.*

*DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002) (holding that a company

manager's opinion that "race was a factor" in the company's decision not to

promote the plaintiff was not direct evidence for purposes of the plaintiff's

discrimination claim because the manager had "no involvement in the decision-

making process with respect to the particular jobs at issue").  Belanger opines that

the Board would never hire Plaintiff as the Fire Chief because he is Asian, but

Belanger makes it clear that this is only his "opinion" and is based on what he

believes to be "the average white man's opinion of Asians."  (ECF No. 57, Ex. 1 at

15

38.)  Essentially, Belanger's statement constitutes nothing more than his subjective

belief-- which is based only on his subjective view of "the average white man's

opinion of Asians"-- as to why the Board rejected Plaintiff's application.  Plaintiff

presents no evidence to conclude that there is any basis for Belanger's assumption

that the Board's members in fact shared these offensive views.  As such, this

evidence does not constitute circumstantial evidence of discrimination, either.

For these reasons, the Court is denying Plaintiff's motion to amend his

Complaint to name Whittaker as a defendant or to add a claim of race

discrimination.

## IV.    Applicable Law and Analysis of Plaintiff's Retaliation Claims

### A.    42 U.S.C. § 1983

Plaintiff claims retaliation in violation of § 1983.  A plaintiff may assert a

§ 1983 claim in addition to a Title VII claim, but only when the § 1983 claims rests

on an alleged infringement of rights guaranteed by the Constitution.[4]  *Day v.*

*Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984) (citing *Grano v.*

*Dep't of Dev., City of Columbus*, 637 F.2d 1073 (6th Cir. 1980)).  When the § 1983

claim parallels the plaintiff's retaliation claim and does not allege violation of a

---

[4] The Court emphasizes for the benefit of Plaintiff's counsel that a § 1983 violation
requires proof of (1) the violation of a *constitutional right* (2) by the defendant
while acting under color of state law.  *See, e.g., Carl v. Muskegon Cnty.*, 763 F.3d
592, 595 (6th Cir. 2014).

16

constitutional right, "Title VII provides the exclusive remedy" and the § 1983 is subject to dismissal. *Id.* at 1204-05.

Plaintiff never mentions the Constitution or any amendment to the Constitution in his Complaint. As Defendants point out in their summary judgment motion, Plaintiff does not present evidence to show the violation of any constitutional right. Plaintiff's response suggests that he believes alleging § 1983 is the only way to hold the Township liable for the mistreatment he claims he suffered. (*See* ECF No. 58 at Pg ID 1129-30.) The Township can be held vicariously liable for the alleged retaliatory acts of its employees under Title VII, however. *See, e.g., Laster v. City of Kalamazoo*, 746 F.3d 714, 732 (6th Cir. 2014) (listing the three "appropriate circumstances[ where] Title VII permits claims against an employer for coworker retaliation").

For these reasons, Defendants are entitled to summary judgment with respect to Plaintiff's § 1983 claim.

**B.     Retaliation in Violation of Title VII and ELCRA**

Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). ELCRA similarly prohibits retaliation against an

17

employee who has "opposed a violation of [ELCRA]."  Mich. Comp. Laws

§ 37.2701(a).  Claims of retaliation brought under these statutes are analyzing

using the same standard.  *Fuhr v. Hazel Park Sch. Dist.*, 701 F.3d 668, 673 (6th

Cir. 2013).

Such claims can be established either by direct evidence or by circumstantial

evidence that would support an inference of retaliation. *Laster*, 746 F.3d at 730.

Plaintiff believes that Witkowski's deposition testimony constitutes direct evidence

that the Board found his application insufficient in retaliation for his 2010 EEOC

Complaint.  This is incorrect, as Witkowski did not testify that Heyl or Uherek

indicated that they voted to reject Plaintiff's application because of his EEOC

charge.  Rather, Witkowski inferred that this was the impetus for their conduct

because Heyl and Uherek expressed frustration at one time or another about

Plaintiff's EEOC filing.  As stated earlier, "[d]irect evidence is evidence that

proves the existence of a fact without requiring any inferences."  *Rowan*, 360 F.3d

at 548.  Plaintiff does not offer evidence which even he believes constitutes direct

evidence of retaliation with respect to Rachwal's treatment of him after Rachwal

became Fire Chief.

Plaintiff's claims therefore must be analyzed under the burden-shifting

framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973).  Under this framework, Plaintiff first must establish a prima facie case of

18

retaliation by showing that: (1) he engaged in protected activity; (2) his exercise of protected rights was known to Defendants; (3) Defendants thereafter took an adverse employment action against him or he was subjected to severe or pervasive retaliatory harassment; and 4) there was a causal connection between Plaintiff's protected activity and the adverse employment action or harassment he suffered. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Retaliatory acts by an employer are not actionable unless they are "materially adverse" to the plaintiff's employment. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Examples of materially adverse actions are "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000). As to the fourth prong, Title VII retaliation claims require "but-for causation" which "require[ ] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, -- U.S. --, 133 S. Ct. 2517, 2533 (2013).

If Plaintiff carries his burden of establishing a prima facie case of retaliation, the burden of production of evidence shifts to Defendants to articulate some legitimate, nondiscriminatory reason for their actions. *Morris*, 201 F.3d at 792-93. If Defendants satisfy their burden, the burden shifts back to Plaintiff to show that

19

Defendants' proffered reason was not the true reason for the adverse employment action. *Id*. at 793.

In their summary judgment motion, Defendants challenge Plaintiff's ability to demonstrate the third and fourth elements of his prima facie case. First they argue that the Board's failure to interview Plaintiff and Rachwal's conduct towards Plaintiff do not constitute an adverse employment action or severe or persuasive harassment. Next they argue that there is no evidence of a causal connection between Plaintiff's protected activity and the conduct of which he complains.

Rachwal's alleged harassment of Plaintiff after Rachwal became the Fire Chief does not constitute an adverse employment action. Plaintiff was never penalized for failing to meet the twenty percent run requirement and he was never terminated.[5] Harassment alone can constitute an adverse employment action, but only if it is "severe or persuasive." *Morris, supra*. Even assuming Plaintiff's facts to be true, this standard is not satisfied here. *See Allen*, 165 F.3d at 410 (holding that an employee's receipt of "counseling memoranda" and claim that supervisors monitored him more closely than other employees did not constitute an adverse employment action); *Reid v. Madison Cnty., Tenn.*, No. 98-5312, 1999 WL 196560, at *2 (6th Cir. Apr.1, 1999) (unpublished) (holding that reprimand did not

---

[5] Notably, Rachwal's memo concerning the failure to make the twenty percent requirement was given to four or five other firefighters as well. (ECF No. 53 Ex. 11 at 39.)

constitute materially adverse action in Title VII retaliation claim where plaintiff did not suffer time off, suspension, loss of pay or benefits, or change in duties).

Defendants cite three cases in support of their contention that the Board's refusal to interview Plaintiff is not an adverse employment action: *Sanchez-Rodriguez v. AT&T*, 673 F.3d 1, 13-14 (1st Cir. 2012); *Foraker v. Apollo Grp., Inc.*, 427 F. Supp. 2d 936, 942 (D. Ariz. 2006); and *Kortan v. State of Cal.*, 5 F. Supp. 2d 843, 853 (C.D. Cal. 1998), aff'd sub nom. in *Kortan v. Calif. Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000). In *Sanchez-Rodriguez*, the First Circuit did not hold that the failure to interview can never constitute an adverse employment action. Rather, the court held that in fact such conduct *can* constitute an adverse employment action *if* certain showings are made: (1) the plaintiff applied for a particular position; (2) the position was vacant; and (3) the plaintiff was qualified for the position. 673 F.3d at 14. The plaintiff in that case, however, failed to offer proof suggesting that she was qualified for the position and that there as even an opening. *Id*. The plaintiff did not assert a failure to interview as an adverse employment action in *Kortan*. 5 F. Supp. 2d at 852-53. While *Foraker* does state that a failure to interview does not constitute an adverse employment action, 427 F. Supp. 2d at 942, the District Court for the District of Arizona's decision does not constitute persuasive or binding authority and it conflicts with Sixth Circuit decisions holding that a failure to promote does constitute an adverse employment

21

action.  *See, e.g., Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004); *Allen v. Mich. Dep't of Corrs.*, 165 F.3d 405, 410 (6th Cir. 1999).

Defendants nevertheless argue, as well, that Plaintiff fails to show a causal connection between the filing of his EEOC complaint in 2010 and the Board's determination that his application for the Fire Chief position was insufficient. Temporal proximity does not suggest a connection, as more than two years passed between Plaintiff's EEOC filing and the Board's decision.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (finding that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all").  The only evidence Plaintiff offers to demonstrate a connection is Witkowski's deposition testimony that, based on Heyl's and Uherek's unspecified comments expressing anger with the EEOC filing, made at some unidentified time, Witkowski was of the opinion that the rejection of Plaintiff's application was due to the filing.  " 'A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one.' "  *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (quoting *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001)).  Nevertheless, the plaintiff must "produce enough evidence of a retaliatory motive such that a reasonable juror *could* conclude that [the adverse action] would not have occurred but for his engaged in protected activity."  *Eckerman v. Tenn Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010) (emphasis added).

22

This Court finds that Witkowski's testimony, on its own, is insufficient to lead a reasonable juror to conclude that the Board would have accepted Plaintiff's application but for his protected conduct two years earlier. Witkowski could not recall exactly what Heyl or Uherek said and he could not recall whether the comments were even made close in time to the September 25, 2012 Board meeting. Notably, there is no evidence that any Board members, other than Heyl and Uherek expressed anger concerning Plaintiff's EEOC filing. Van Fossen was the member who raised the issue of Plaintiff's incomplete application to Heyl. Even without Heyl's or Uherek's vote, the votes (3) in favor of not considering Plaintiff's application exceeded the single "nay" vote. Defendants' counsel indicated at the motion hearing that only a majority vote was needed for the Board to decide that Plaintiff's application should not be considered because it was incomplete.[6]

---

[6] The Court has concerns about the application process generally. For example, it appears that there were some deficiencies in how the position was first announced and/or the time allotted for applications to be submitted. The Court finds it curious that the Board interviewed some candidates before the second deadline for applications to be submitted. Nevertheless, Plaintiff does not allege a violation of his due process rights (the Court is not suggesting that he could assert a viable due process claim). Plaintiff is alleging a retaliation claim. Regardless of any deficiencies or oddities in the Fire Chief hiring process, there is insufficient evidence that Plaintiff's EEOC application had any connection to the Board's decision with respect to his application.

23

For these reasons, the Court concludes that Plaintiff fails to present evidence in response to Defendants' motion to demonstrate a prima facie case of retaliation.[7]

## IV.   Conclusion

For the reasons set forth above, the Court concludes that Plaintiff's request to amend his Complaint was made too late and, if allowed, would prejudice Defendants and that it would be futile for Plaintiff to amend his pleading to add a race discrimination claim or a claim against Whittaker.  Further, the Court holds that Plaintiff fails to allege facts or present evidence to state a § 1983 claim separate from his Title VII claim and thus his § 1983 claim must be dismissed. Finally, Plaintiff fails to present evidence to establish a prima facie case of retaliation in violation of Title VII or ELCRA.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to amend his Complaint is **DENIED**;

---

[7] Having reached this conclusion, the Court sees no reason to address Defendants' additional arguments in their summary judgment motion, including that: there is no evidence of a policy or custom to hold the Township liable; punitive damages are unavailable against the Township under Title VII or § 1983; and exemplary damages are not recoverable apart from actual damages under ELCRA.  As the Court is denying Plaintiff's motion to amend his Complaint to add a claim of race discrimination, it also will not address Defendants' argument in its summary judgment motion that they are entitled to qualified immunity with respect to the claim.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 13, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 13, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

25